Case 1:19-mj-01183-BPG Document 3 Filed 04/18/19 Page 1 of 18

FILED ENTERED
LOGGED RECEIVED

APR 18 2019

AT BALTIMORE
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF 22 TARGET DEVICES IN THE U.S. DRUG ENFORCEMENT ADMINISTRATION'S POSSESSION | CASE NO. 19-1183 BPG |

**************

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH AND SEIZURE WARRANT

Your Affiant, James Norton Task Force Officer with the Drug Enforcement Administration ("DEA"), being duly sworn, hereby deposes and states as follows:

### Introduction

1. Your Affiant makes this Affidavit in support of an application under Federal Rule of Criminal Procedure 41 for a search and seizure warrant authorizing the examination of nineteen (19) cellular telephones and three (3) personal tablets, as fully described in Attachment A (collectively referred to as the "**TARGET DEVICES**")

2. Your Affiant submits that probable cause exists to believe that Watson Patrick BRUCE a/k/a "Tree" ("**BRUCE**"), Todd Rayshard THOMAS a/k/a "Little Man" ("**THOMAS**"), Lawrence Michael BRANCH III ("**BRANCH**"), Larry Michael BROWN ("**BROWN**") (collectively referred to as the "**TARGET SUBJECTS**") have used the **TARGET DEVICES** in furtherance of drug trafficking activities in violation of 21 U.S.C. §§ 841(a)(1) and 846, and the **TARGET DEVICES** contain fruits and evidence of conspiracy to drug trafficking activities.

### Affiant's Background

3. Your Affiant is an investigative or law enforcement officer of the United States, within the meaning of 18 U.S.C. § 2510(7)—that is, an officer of the United States who is

empowered by law to conduct investigations of and to make arrests for offenses enumerated in 18 U.S.C. § 2516.

4. Since November 2013, your Affiant has been a Task Force Officer with the DEA, assigned to the DEA High Intensity Drug Trafficking Areas Group 43. Your Affiant also works at the Calvert County (Maryland) Sheriff's Office ("CCSO") Drug Enforcement Unit ("DEU") for over ten years, rising to the level of Detective over five years ago.

5. As a DEA Task Force Officer, your Affiant has participated in numerous drug investigations, several of which were Organized Crime Drug Enforcement Task Force ("OCDETF") investigations. During these investigations, your Affiant has performed duties associated with electronic surveillance including, but not limited to, serving as the lead case agent, monitoring consensual telephone calls, conducting physical and pole camera surveillance, listened to hundreds of court-authorized intercepted calls between individuals involved or suspected to be involved in drug trafficking activities, reviewing court-authorized intercepted text messages, interpreting the court-authorized intercepted calls and texts, and transcribing those calls. In addition, your Affiant has worked directly with confidential sources and informants to conduct controlled drug purchases; has debriefed them; and has interviewed drug dealers and users about their lifestyle, appearance, and habits. Moreover, your Affiant has applied for search warrants, arrest warrants, and Title III wire intercepts; executed search warrants; and seized evidence related to drug trafficking, including substantial quantities of narcotics and drug paraphernalia.

6. As a Detective with the CCSO DEU, your Affiant has investigated narcotics trafficking, firearms trafficking, and overdose related deaths. During those investigations, your Affiant has served as an affiant of search warrants and for which their execution led to the seizure of

firearms, narcotics, drug paraphernalia, and documents relating to the distribution of narcotics as well has arrested those who violated state gun and drug laws and the state of Maryland successfully prosecuted.

7. Your Affiant also received specialized training in drug importation, manufacture, concealment, and distribution; drug recognition and interdiction; crime scene investigations; evidence collection; gang investigations; interviews and interrogation; and cellular telephone forensics and analysis. Your Affiant earned an Associate in Arts in Criminal Justice from the College of Southern Maryland in La Plata, Maryland.

8. Based on your Affiant's knowledge, training, and experience, your Affiant has become familiar with the following: (1) the manner in which drug traffickers (a) transport, store, and distribute drugs, (b) collect, keep, and conceal the proceeds of their illegal activities; and (2) the ways in which drug traffickers use cellular telephones, cellular telephone technology, coded communications or slang during conversations, and other means to facilitate their illegal activities and thwart law enforcement investigations.

9. Specifically, based on your Affiant's knowledge, training and experience, your Affiant learned that persons involved in illegal drug distribution commonly do the following:

    a. Maintain keys to safe deposit box, books, records, receipts, notes, ledgers, bank records, money orders, and other papers relating to the importation, manufacture, transportation, ordering, sale, and distribution of illegal controlled substances. Dealers in illegal controlled substances maintain the aforementioned enumerated items where they have ready access to them, such as in secured locations within their residence, the residences of their friends, family members, and associates, or their drug distribution locations. Due to the advancement in technology, drug traffickers may use computers and other electronic storage media, including cellular telephones and personal tablets, to store the records listed above.

  b. Take, or cause to be taken, photos of themselves, their associates, their property, and illegal contraband. Drug traffickers usually maintain these photos where they can readily access them, such as their cellular telephone and electronic devices, their residence, the residences of their friends, family members or associates.

  c. Use cellular telephones and other electronic devices to maintain their co-conspirators' names and contact information, facilitate drug transactions, and run their drug distribution operations.

## Basis of Information

10. The facts set forth in this Affidavit does not contain every fact known to me regarding this investigation, but rather contains information necessary to demonstrate probable cause in support of the above-referenced search warrant. The facts and information contained in this affidavit are based on my personal knowledge and information obtained from federal and state law enforcement officers. All observations referenced in this affidavit that I did not personally make were relayed to me by the person(s) who made such observations or in reports that detailed the events described by that person(s).

## Probable Cause

11. In October 2017, the DEA and the CCSO DEU began investigating heroin traffickers operating in the Anne Arundel County area. Among the targets of this investigation are the **TARGET SUBJECTS**.

12. The intercepted calls and texts occurring over the cellular telephone assigned call number **(410) 212-8980** with International Mobile Subscriber Identity ("IMSI") 310120153606409, subscribed to John Wright, the subscriber address of 2406 Autumn Harvest Court Odenton, Maryland 21113, and used by **BRUCE**, whose service provider is Sprint Corporation ("SPRINT") and the cellular telephone number **(443) 804-0072** with IMSI 310120227102162, subscribed to no

4

name listed, the subscriber address is not listed, and used by **BROWN**, whose service provider is SPRINT confirmed that **BROWN** supplied **BRUCE** and **BRANCH** with narcotics and **THOMAS** sold narcotics for and at the direction of **BRUCE**.

13. On March 14, 2019, Magistrate Judge Stephanie A. Gallagher issued, inter alia, Criminal Complaints and arrest warrants for the **TARGET SUBJECTS**, because there was probable cause to believe that the **TARGET SUBJECTS** conspired to distribute and possess with the intent to distribute a controlled dangerous substance, in violation of 21 U.S.C. § 846; possessed with the intent to distribute a controlled dangerous substance, in violation of 21 U.S.C. § 841(a)(a); and used communication facilities to facilitate the commission of such offenses, in violation of 21 U.S.C. § 843(b).

14. On March 15, 2019, at approximately 6:30 a.m., investigators conducted surveillance of the 2019 black Volvo SUV bearing Maryland license plate number 6DG2921 registered to PV Holding Corporation located at 7432 New Ridge Road, Hanover, Maryland 21076 ("**BRUCE's Vehicle**") that was parked at the Why Hotel at 225 N. Calvert Street, Baltimore, Maryland 21202. They observed **BRUCE** walk towards and unlock **BRUCE's Vehicle** as well as attempt to enter the driver's side door. Law enforcement then arrested **BRUCE**.

15. During a search incident to arrest, law enforcement recovered, inter alia, **TARGET DEVICE 1** and **TARGET DEVICE 2** in **BRUCE**'s right front pants pocket approximately $6,000 in cash, and suspected heroin and cocaine in a plastic knotted bag.

16. On the same day, Magistrate Judge A. David Copperthite issued a search and seizure warrant for **BRUCE's Vehicle**. Shortly after that day, law enforcement executed that search

warrant and recovered **TARGET DEVICE 3** and **TARGET DEVICE 4** in a white plastic bag in the back hatch area of **BRUCE's Vehicle**.

17. On March 15, 2019, Magistrate Judge Gallagher also issued search and seizure warrants for **BRUCE**'s residence, 20 Amberstone Court Unit J, Annapolis, Maryland 21403 ("**TARGET LOCATION 1**"); **BROWN**'s residence, 1307 N. Woodington Road Apt. 4, Baltimore, Maryland 21229 ("**TARGET LOCATION 2**"); **THOMAS**'s residence, 18 Bens Drive Apt. F, Annapolis, Maryland 21403 ("**TARGET LOCATION 3**"); and **BRANCH**'s residence, 515 Kingdom Court, Odenton, Maryland 21113 ("**TARGET LOCATION 4**").

18. At approximately 7:19 a.m., law enforcement executed the search warrant for **TARGET LOCATION 1** and recovered, inter alia, **TARGET DEVICE 5, TARGET DEVICE 6,** and **TARGET DEVICE 7** from the top left dresser drawer in the master bedroom; **TARGET DEVICE 8** from on top of a TV stand in the corner of the master bedroom; and **TARGET DEVICE 9** from the kitchen counter above the kitchen sink.

19. At approximately 6:57 a.m., law enforcement executed the search warrant for **TARGET LOCATION 3** and recovered, inter alia, **TARGET DEVICE 10** and **TARGET DEVICE 11** from the window sill inside bedroom one as well as **TARGET DEVICE 12** from an ironing board inside bedroom one.

20. At approximately 8:20 a.m., investigators conducted surveillance of **TARGET LOCATION 4** and observed **BRANCH** leave **TARGET LOCATION 4** in the 2019 silver Chevrolet Equinox bearing Maryland license plate number 5DR6266 registered to Hertz Vehicles BWI, P.O. Box 8612, Baltimore, Maryland 21240 ("**BRANCH's Vehicle**"). Law enforcement in an unmarked vehicle followed **BRANCH,** who began driving **BRANCH's Vehicle** at high speeds

through back roads. Shortly after, a patrol officer in an unmarked patrol vehicle activated the emergency lights and attempted to make a stop **BRANCH's Vehicle**, but **BRANCH** continuing driving and tossed what appeared to be small baggies out of **BRANCH's Vehicle**'s window. **BRANCH** subsequently stopped **BRANCH's Vehicle**, but when the patrol officer exited the patrol officer's vehicle, **BRANCH** resumed driving slowly **BRANCH's Vehicle** and yelled that he was going to stop on main road. That patrol officer then observed **BRANCH** dumping a white powdery substance out of **BRANCH's Vehicle**'s window, causing it to fall down onto the patrol officer's vehicle and **BRANCH's Vehicle**.

21. Law enforcement arrested **BRANCH** after he stopped at the intersection of Najoles Road and Benfield Boulevard in Hanover, Maryland.

22. At approximately 8:32 a.m., law enforcement searched **BRANCH's Vehicle** and recovered **TARGET DEVICE 13** and **TARGET DEVICE 14** from the center console.

23. At approximately 6:00 a.m., agents executed the search warrant at **TARGET LOCATION 2** and recovered **TARGET DEVICE 15** from a night stand to the left of the bed in bedroom one; **TARGET DEVICE 16** from top of the dresser at the foot of the bed in bedroom one; **TARGET DEVICE 17** from inside of the top dresser drawer of bedroom two; and **TARGET DEVICE 18, TARGET DEVICE 19, TARGET DEVICE 20, TARGET DEVICE 21,** and **TARGET DEVICE 22** from on top of the dresser inside bedroom two.

## Technical Terms

24. Based on my training and experience, your Affiant uses the following technical terms to convey the following meanings:

   a. *Wireless telephone*: A wireless telephone (or mobile telephone, or cellular

telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include Global Positioning System ("GPS") technology for determining the location of the device.

b. *Digital camera*: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media includes various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. *Portable media player*: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media includes various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. *GPS*: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records of the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using

      specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e.   *PDA*: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments, or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media includes various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include GPS technology for determining the location of the device.

f.   *IP Address*: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

g.   *Internet*: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

Based on your Affiant's training, experience, and research, he knows that the **TARGET DEVICES** have capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA, with the capability to access the Internet. In your Affiant's

training and experience, examining data stored on a device of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the devices.

## Electronic Storage and Forensic Analysis

25. Based on your Affiant's knowledge, training, and experience, he knows that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on such devices. This information can sometimes be recovered with forensics tools.

26. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the **TARGET DEVICES** were used, the purpose of their use, who used them, and when were they used. There is probable cause to believe that such forensic electronic evidence might be on the **TARGET DEVICES** because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when were they used.

   d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed

       by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

    e.    Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when it was used, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

27.    *Nature of examination.* Based on the foregoing, and consistent with Federal Rule of Criminal Procedure 41(e)(2)(B), the warrant for which the Affiant is applying would permit the examination of the **TARGET DEVICES** consistent with the warrant. The examination may require authorities to employ techniques, including, but not limited to, computer-assisted scans of the entire medium that might expose many parts of the devices to human inspection in order to determine whether it is evidence described by the warrant.

28.    *Manner of execution.* Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premise. Consequently, your Affiant submits that there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## Conclusion

29.    Based on the information provided in this Affidavit, your Affiant respectfully submits that probable cause exists to believe (1) the **TARGET SUBJECTS** have used the **TARGET DEVICES** in furtherance of drug trafficking activities, in violation of 21 U.S.C. §§ 841(a)(1) and 846; and (2) a search of the **TARGET DEVICES**, in accord with Attachment B, will uncover evidence and fruits of possession with the intent to distribute a controlled substance and conspiracy

to distribute and possess with the intent to distribute a controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 846.

                                             TFO James Norton  
                                             James Norton  
                                             Task Force Officer  
                                             Drug Enforcement Administration

Sworn and subscribed before me this __17TH__ day of April, 2019.

                                             Honorable Beth P. Gesner  
                                             United States Magistrate Judge



## Attachment A: TARGET DEVICES

The property to be searched is described as follows:

| ITEM | DESCRIPTION | SEIZURE LOCATION |
|---|---|---|
| **TARGET DEVICE 1** | Apple iPhone, IMEI: 359410080148081 | Watson Patrick Bruce a/k/a Tree ("**BRUCE**")'s person in right front pants pocket |
| **TARGET DEVICE 2** | Apple iPhone, Model: A1688, FCC ID: BCG-E2946A, IC: 579C-E2946A | **BRUCE**'s person in right front pants pocket |
| **TARGET DEVICE 3** | ZTE Cellular Telephone, Model: Z833, FCC ID: SRQ-Z833, IMEI: 862147035081211, Serial Number: 320473799083 | Inside a white plastic bag in the back hatch area of the 2019 black Volvo SUV bearing Maryland license plate number 6DG2921 registered to PV Holding Corporation located at 7432 New Ridge Road, Hanover, Maryland 21076 ("**BRUCE's Vehicle**") |
| **TARGET DEVICE 4** | Alcatel Cellular Telephone, FCC ID: 2ACCJN011, IMEI: 014892002238578 | Inside a white plastic bag in the back hatch area of **BRUCE's Vehicle** |
| **TARGET DEVICE 5** | Apple iPhone, Model: A1586, FCC ID: BCG-E2816A, IC: 579C-E2816A, IMEI: 355397077596311 | Top left dresser drawer in the master bedroom of 20 Amberstone Court Unit J, Annapolis, Maryland 21403 ("**TARGET LOCATION 1**") |
| **TARGET DEVICE 6** | LG Cellular Telephone, Model: LS751, FCC ID: ZNFLS751, MEID DEC: 089778995802556164, MEID HEX: 35833006270104, Serial Number: 508CYWC0315881 | Top left dresser drawer in the master bedroom of **TARGET LOCATION 1** |

| | | |
|---|---|---|
| **TARGET DEVICE 7** | LG Cellular Telephone, Black and dark grey ZTE flip phone. S/N: 329F74371387 | Top left dresser drawer in the master bedroom of **TARGET LOCATION 1** |
| **TARGET DEVICE 8** | Apple iPad, Model: A1397, FCC ID: BCGA1397, MEID: A10000217A2830, Serial: DLXH53HVDJHG | Top of a TV stand in the corner of the master bedroom of **TARGET LOCATION 1** |
| **TARGET DEVICE 9** | Apple iPad, Model: A1489, FCC ID: BCGA1489, IC: 579C-A1489, Serial: DMPPW7XFCM5 | Kitchen counter above the kitchen sink of **TARGET LOCATION 1** |
| **TARGET DEVICE 10** | Apple iPad, Serial F9FOK41LFCMS, IC 579C-A1489 | Window sill inside bedroom one of 18 Bens Drive Apt. F, Annapolis, Maryland ("**TARGET LOCATION 3**"); |
| **TARGET DEVICE 11** | Apple iPhone, IMEI 356147093291945, IC 579C-E2816A | Window sill inside bedroom one of **TARGET LOCATION 3** |
| **TARGET DEVICE 12** | Apple iPhone, Serial C8PWV8JVJC6F, IMEI 35 300109 827723 | An ironing board inside bedroom one of **TARGET LOCATION 3** |
| **TARGET DEVICE 13** | Apple iPhone with black face and white back | Center console of the 2019 silver Chevrolet Equinox bearing Maryland license plate number 5DR6266 registered to Hertz Vehicles BWI, P.O. Box 8612, Baltimore, Maryland 21240 ("**BRANCH's Vehicle**") |
| **TARGET DEVICE 14** | Motorola Cellular Telephone, Model: XT-1922-6 | Center console of **BRANCH's Vehicle** |

| TARGET DEVICE 15 | Samsung Cellular Telephone, IMEI: 3525567/07/287607/3 | a night stand to the left of the bed in bedroom one 1307 N. Woodington Road Apt. 4, Baltimore, Maryland 21229 ("**TARGET LOCATION 2**") |
|---|---|---|
| **TARGET DEVICE 16** | ZTE Cellular Telephone, Serial Number: 322152866831 | top of the dresser at the foot of the bed in bedroom one of **TARGET LOCATION 2** |
| **TARGET DEVICE 17** | ANS Cellular Telephone, FCC ID: 2ALZMUL40 | inside of the top dresser drawer of bedroom two of **TARGET LOCATION 2** |
| **TARGET DEVICE 18** | Samsung Cellular Telephone, IMEI: 351808/09/071/491/7 | top of the dresser inside bedroom two of **TARGET LOCATION 2** |
| **TARGET DEVICE 19** | LG Cellular Telephone, PN4438540691 | top of the dresser inside bedroom two of **TARGET LOCATION 2** |
| **TARGET DEVICE 20** | ZTE Cellular Telephone, IMEI: 863461036473976 | top of the dresser inside bedroom two of **TARGET LOCATION 2** |
| **TARGET DEVICE 21** | Alcatel Cellular Telephone, IMEI: 01494000294996 | top of the dresser inside bedroom two of **TARGET LOCATION 2** |
| **TARGET DEVICE 22** | HTC Cellular Telephone, IMEI: 355972053271509 | top of the dresser inside bedroom two of **TARGET LOCATION 2** |

**TARGET DEVICE 1, TARGET DEVICE 2, TARGET DEVICE 3, TARGET DEVICE 4, TARGET DEVICE 5, TARGET DEVICE 6, TARGET DEVICE 7, TARGET DEVICE 8, TARGET DEVICE 9, TARGET DEVICE 10, TARGET DEVICE 11, TARGET DEVICE 12, TARGET DEVICE 13, TARGET DEVICE 14, TARGET DEVICE 15,**

### Attachment B: Items to be Seized From the TARGET DEVICES

1. This warrant authorizes the search and seizure of all records contained within the cellular telephone described in Attachment A which constitute evidence of violations of 21 U.S.C. §§ 841 and 846 by Watson Patrick Bruce a/k/a "Tree", Todd Rayshard Thomas a/k/a "Little Man," Lawrence Michael Branch, III, Larry Michael Brown, and their known and unknown co-conspirators, including, but not limited to, the following:

    a. images;

    b. videos;

    c. records of incoming and outgoing voice communications;

    d. records of incoming and outgoing text messages;

    e. the content of incoming and outgoing text messages;

    f. voicemails;

    g. e-mails;

    h. voice recordings;

    i. contact lists;

    j. data from third-party applications (including social media applications like Facebook and Instagram and messaging programs like WhatsApp and Snapchat);

    k. location data;

    l. bank records, checks, credit card bills, account information, and other financial records; and

    n. evidence of who used, owned, or controlled the devices at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

    o. evidence of software that would allow others to control the **TARGET DEVICES**, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

      p.   evidence of the lack of such malicious software;

      q.   evidence of the attachment to the **TARGET DEVICES** of other storage devices or similar containers for electronic evidence;

      r.   evidence of counter forensic programs (and associated data) that are designed to eliminate data from the **TARGET DEVICES**;

      s.   evidence of the times the **TARGET DEVICES** were used;

      t.   passwords, encryption keys, and other access devices that may be necessary to access the **TARGET DEVICES**;

      u.   documentation and manuals that may be necessary to access the **TARGET DEVICES** or to conduct a forensic examination of the **TARGET DEVICES**;

      v.   contextual information necessary to understand the evidence described in this attachment.

2.     The search procedure of the electronic data for the items described in Paragraph 1 may include the following techniques (the following is a non-exhaustive list, and the government may use other procedures that, like those listed below, minimize the review of information not within the list of items to be seized as set forth herein, while permitting the government examination of all the data necessary to determine whether the data falls within the items to be seized):

      a.   surveying various file "directories" and the individual files they contain (analogous to looking at the outside of a file cabinet for markings it contains and opening a drawer believed to contain pertinent files);

      b.   "opening" or cursorily reading the first few "pages" of such files in order to determine their precise contents;

      c.   "scanning" storage areas to discover and possible recover recently deleted files;

      d.   "scanning" storage areas for deliberately hidden files; or

      e.   performing key word or other search and retrieval searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are related to the subject matter of the investigation.

3.     If after performing these procedures, the directories, files, or storage areas do not reveal evidence of drug trafficking or conspiracy in violation 21 U.S.C. §§ 841 and 846, the further search of that particular directory, file, or storage area shall cease.

**TARGET DEVICE 16**, **TARGET DEVICE 17**, **TARGET DEVICE 18**, **TARGET DEVICE 19**, **TARGET DEVICE 20**, **TARGET DEVICE 21**, **TARGET DEVICE 22**, and **TARGET DEVICE 23** (collectively referred to as the "**TARGET DEVICES**") are in the United States Drug Enforcement Administration's possession in Maryland.